EASTMAN OIL WELL SURVEY CO. v. SPERRY–SUN WELL SURVEYING CO.

No. 10197.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1942.

Rehearing Denied Jan. 16, 1943.

Jack A. Schley, of Dallas, Tex., for appellant.

Ira J. Allen, of Houston, Tex., and George A. Smith, of Philadelphia, Pa., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was for infringement of a method claim of one [1] and four method and two apparatus claims of another [2] patent for orienting and setting whipstocks designed to guide a drilling tool in a definite predetermined direction, e. g., in straightening a crooked bore-hole or deliberately deflecting it in a given direction.

"A whipstock", as appellant's brief described it, "is, broadly speaking, a rotatable wedge with a grooved inclined face, and its purpose is to deflect or change the direction of drilling by guiding the drill bit down its face. It is used to change the course of the well or to direct the bit back to the perpendicular line of the well to straighten the hole. The practice in connection with the use of it has been to first make a preliminary survey of the well bore by means of an instrument, called a single shot or a multiple shot, to determine the degree of inclination from the perpendicular and the direction of inclination. This preliminary survey informs the operator as to the degree of inclination of the well bore and usually the direction of slant with relation to the Earth's magnetic north.

For instance, it may be found that the well bore is inclining eight degrees from the perpendicular and is directed fifteen degrees west of north. This survey is made prior to the performance of the method here in controversy. When the drill pipe with the whipstock is lowered into the well and brought to rest the operator does not know in which direction the whipstock is facing, therefore, he must run a second survey; and such survey is the subject matter of this controversy."

The claim was that defendant was infringing these claims by employing a method and device substantially the equivalent of those claimed in plaintiff's patents. The defenses were lack of invention, anticipation, noninfringement, and, as to the Hyer Patent, that he was not the true inventor. The district judge, of the opinion that the patents were valid and infringed, gave judgment accordingly.

Appellant here urging upon us the same contentions it made below, insists that Hyer's admission that he had nothing to do with putting, and did not put, in the patent drawings the figure 4, disclosing the indirect method of obtaining the indications sought, shows that he was not the sole and only inventor and avoids the patent. But its main argument is directed to the issues of anticipation, and therefore lack of invention, and non-infringement. Insisting that the claims of both Palmer and Hyer are anticipated by, and invalid under Straatman [3] and Koerner [4]; it ar-

---

[1] Claim 33 of A. B. Palmer et al., U. S. Patent No. 2,012,138 application Nov. 28, 1933, patented Aug. 20, 1935, reading as follows: "The method of orienting a whipstock within a bore-hole including lowering the whipstock into the bore-hole by means of a sectional drill stem, determining the azimuthal position of the whipstock while it is still attached to the drill stem by means of an instrument bearing a known relationship to the whipstock, and fixing the whipstock in position."

[2] Method claims Nos. 1, 5, 6 and 7 and apparatus claims Nos. 3 and 8 of R. S. Hyer, U. S. Patent No. 2,120,670, application July 5, 1935, patented June 14, 1938. All of these claims deal with a method or apparatus for mechanically indicating azimuth in a bore-hole, and for reading or otherwise determining these indications when the indicating means have been withdrawn from the hole. Of

these claims, while each of them very closely resembles every other, 6, 7 and 8 are a little broader than 1, 3 and 5 in that claims 1, 3 and 5 refer to "a magnet", while 6, 7 and 8 refer to a "magnetic element", a broader term, so that claims 6, 7 and 8 are necessarily infringed if claims 1, 3 and 5 are. Of these three, claim 5 is somewhat broader than claim 1 in that claim 5 is not limited, as claim 1, is to any recording and does not specify the particular fashion in which the "determining", i. e., the making determinable or fixing the relative indications is carried out so that they may be ascertained at the surface. Apparatus claim 3 follows the teaching of method claim 1.

[3] U. S. Patent No. 1,806,509, patented May 19, 1931. This invention relating to a process and apparatus for straightening out and giving deviations to bore-holes by means of a whipstock recited: "It is known that by means of a whip-

gues further that if not so invalid, it must be because they are to be so narrowly construed that defendant's device is not an infringement of them. Appellee concedes, as it must, that neither Palmer nor Hyer were pioneers in the art of orienting and setting whipstocks, a tool well known in the oil well drilling trade. But it insists that its inventions are advancements in the art of such merit that they are entitled to be protected as well against equivalent as against identical devices. It thus at once appears that what is presented here is the familiar picture of claims to an invention not of a pioneer nature, but, if invention at all, representing only a limited advance over earlier disclosures in the same field. Here the claimed infringer seeks to impale plaintiff on the horn of claiming too broadly, and, therefore, because of the prior art, having no patent at all, or on that of having its invention so narrowly defined that, its patent sustained as valid, its suit fails because it is unable to obtain a finding and decree of infringement. An infringement of such patents is not easily made out, since, while in principle the doctrine of equivalence is applicable to them, it is only so when most narrowly circumscribed, Hughes v. Magnolia Petroleum Co., 5 Cir., 88 F.2d 817; Shephard v. Carrigan, 116 U.S. 593, 597, 6 S.Ct. 493, 29 L.Ed. 723. In short, plaintiff in this case, as in so many others like it, finds the going hard, the sledding rough in its efforts to meet defendant's claim on the one hand that its method and device are mechanically, and, therefore, substantially different from and do not infringe plaintiff's method and device, and on the other hand that defendant has but followed the disclosures of earlier patents, and if in doing so it has infringed the claim of plaintiff, then plaintiff's patents are invalid because what infringes, if later, necessarily anticipates if prior, Butex Gas Co. v. Southern Steel Co., 5 Cir., 123 F.2d 954; Johnston Formation Testing Co. v. Halliburton, 5 Cir., 88 F.2d 270; Otis Pressure Control, Inc., v. Guiberson Corp., 5 Cir., 108 F.2d 930; Price-Trawick, Inc., v. Gas Lift Corp., 5 Cir., 101 F.2d 134.

Examining claim 33 of the Palmer patent in the light the governing prin-

---

stock, a drillhole can be given a deviation from its original direction. There were, however, up to this date no practically useful method and means known to give this whipstock such a position as to force a slanting hole back into the normal or vertical line. Now this method and means are provided by the invention, which in principle consists in the orientation of a whipstock with regard to a clinometer," e. g., "acid bottle". " * * * Since this orientation constitutes the essence of the invention, it will be explained herein more in detail." There follows a full explanation and this statement: "It is evident that the described process may be altered in various ways without deviating from the principle of the invention. As has already been observed, any suitable clinometer may be used, provided it can be orientated according to the principle of the invention with regard to the whipstock. Also the method of orientation itself may vary considerably, and, e. g., instead of the described auxiliary element 4, any other element may be used which can serve for indicating the position of the plane of symmetry of the whipstock." There were three claims: "No. 1 was a process claim comprising the insertion in the bore-hole of a series of tubes provided at its lower end with a whipstock recording the position of the plane of symmetry of the whipstock with regard to the deviation plane of the bore-hole by means of a clinometer device and shifting the position of the whipstock by displacing its tubes by the desired angle in accordance with the record obtained." Nos. 2 and 3 are apparatus claims, claim No. 3 differing from claim No. 2 in character of the element for making the indication, but both designed to make indication marks upon a clinometer device in accordance with the teaching of the process claim.

4 German Patent No. 197,213 patented April, 1907, describing it as a method of orienting the course of bore-holes and reciting that use of the compass for orientation has not led to reliable results, the inventor declares that the method, described in his patent, has for its purpose making use of magnetic needle for orientation. He then described the method thus: "A magnetic needle is placed in a strong, artificially produced magnetic field and that then through alternate lowering of the magnetic needle and of the magnetic field the rotation of a scale connected with the magnetic field is effected." This was the claim of the patent: "Process for ascertaining the course of bore-holes characterized in that a magnetic needle connected with a scale is placed in a powerful, artificially excited magnetic field and that by alternate repression of the magnetic needle and of the magnetic field the rotation of the scale will be determined."

ciples shed on the undisputed facts, it is quite clear that that claim is so broadly stated and so wholly without effective limitations, the words "bearing a known relationship to the whipstock" being wholly without effect as such, as that if allowed, it would give a general monopoly on methods of orienting, and determining the azimuthal position of, whipstocks in a borehole. In the light of the Straatman patent, this will not do, and it is quite clear that the district judge was in error in holding this patent valid and infringed. The Hyer patent with its definitive claims stands differently. The point made against it that Hyer was not responsible for, and was ignorant of, how figure 4 got into the patent and, therefore, that he was not the sole inventor is, we think, completely without substance. The district judge was right in rejecting it. He was right too in not holding the patent invalid for anticipation. It is perfectly true that, as Straatman does, Hyer claims methods and apparatuses as having means for obtaining indications, and for making a record, of the inclination of, the whipstock, and the direction in which it is facing, and that the results desired and achieved by both Hyer and Straatman are essentially the same. It is true, too, that the use, for the purpose of orienting the whipstock, of a magnet, magnetic compass or magnetic means is clearly, indeed precisely disclosed, in the Koerner patent. But it is also true that in carefully and precisely setting out the methods and describing the apparatuses for indicating and obtaining a record of azimuth, which Hyer claims is his invention, he has given them such specificity and so definitely limited them as that in view of the presumption of patentability which attaches to the grant of a patent, it cannot be said the claims are anticipated by Straatman and Koerner and invalid. We think, however, that limited and precise, as these claims are, a comparison of defendant's and plaintiff's method and device leaves in no doubt that defendant has not infringed them. It will serve no useful purpose to set down here and contrast these differences in mechanical construction. It is sufficient to say that the differences exist, that plaintiff recognizes that they do, and that its claim to a decree is based not upon the contention that they do not exist, but that, under the doctrine of equivalence, they are not sufficient to save defendant's device from the charge of infringement. We do not think so. Much is said in the

argument as to whether, as plaintiff claims, defendant got the suggestion for its device from plaintiff's patent and thereafter exercised its ingenuity to obtain its benefits while introducing into its own device sufficient differences in form to make it noninfringing, or whether, as defendant claims, it got the inspiration for it from other sources. We will not undertake to determine this for we think it wholly unimportant. If what the defendant is doing infringes, plaintiff should have its decree no matter whether defendant thought it up independently or got the idea from plaintiff's patent. If, on the other hand, what it does does not infringe, the fact that a knowledge of plaintiff's patent started defendant on the search for a device of its own will not entitle plaintiff to a decree. Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298. The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.