**MATTHEWS et al. v. KOOLVENT METAL AWNING CO.**

No. 11467.

Circuit Court of Appeals, Fifth Circuit.

Nov. 23, 1946.

Rehearing Denied Jan. 16, 1947.

E. W. Moise, of Atlanta, Ga., and A. L. Ely and Bernard C. Frye, both of Akron, Ohio, for appellants.

William H. Parmelee, of Pittsburgh, Pa., and James A. Branch, of Atlanta, Ga., for appellee.

---

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appealing from a decree adjudging the patent valid but not infringed, plaintiffs are here querying, "What shall it profit a patentee that his patent is declared valid if his claims are so precisely read, the range of equivalence so narrowly confined, that piracy is rewarded for the cunningness of its dissimulation and the patentee is robbed of the fruits of his invention?".

Complaining of the decree as another in that long and growing list of. judgments in patent infringement suits which, finding the patent valid but not infringed, keep the promise of the patent to the ear while they break it to the hope, they insist: that such a decree, while correct in cases of patents for narrow improvements,[1] is unjust here for the claims of the patent describe an invention of marked novelty and utility, and must be read in the light of the fact that they do; and that in finding noninfringement, the district judge, misled by mere appearance, has accorded to nonfunctional differences in form and arrangement a significance and weight to which they are not entitled.[2]

Calling attention to the claims made for defendant's awning in its advertising circular[3] of greater coolness and free circulation of air in contrast to the efforts, made on the trial, to minimize "free open space for heat to escape", on which in its selling literature it places so much emphasis, and to magnify the rain resisting and what it calls the chimney effect of its so called pan and cover structure, appellants urge upon us that defendant should not be permitted in selling its awning to claim all the distinctive features of Matthews' invention and then escape in court the consequences of the infringement by putting forward, as functional and substantial, immaterial differences in form.

To support the defense of anticipation, only two patents were introduced from the prior art. One of these dealt with old style shuttered window blinds, the other with an improvement in ventilation, and it is quite plain that neither anticipated Matthews' awning.

The evidence without substantial conflict establishes that Matthews was the inventor of the awning patented to him; that it was a real invention having both novelty and utility; and that while its field was small, in its field the patent was in its nature primary and not a mere combination for a narrow improvement. Designed to furnish shade from the sun without, as the awnings then in use did, confining pockets of hot air and thus to an extent neutralizing the benefits of the shade, the invention

---

[1] Grinnell Washing Machine v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196; Butex Gas Co. v. Southern Steel Co., 123 F.2d 954, 955; Edward v. Johnston Formation, D.C., 44 F.2d 607, affirmed 5 Cir., 56 F.2d 49; Hughes v. Magnolia, 5 Cir., 88 F.2d 817; Eastman Oil Well v. Sperry Sun, 5 Cir., 131 F.2d 884; Railroad Supply Co. v. Elyria, 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136; White v. Gage, 5 Cir., 128 F.2d 500.

[2] "Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same manner, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape. Curtis, Patents (4th ed.) sect. 310." Machine Co. v. Murphy, 97 U.S. 120, at page 125, 24 L.Ed. 935.

[3] "WHY KOOLVENT AWNINGS ARE COOLER AND PERMANENT" "This illustration shows the scientific construction of KOOLVENT Ventilated Metal Awnings and how it aids the free circulation of air through the patented vents and louvers which carry off the solar heat as it is produced. Constructed of a series of separated rust resisting special paint grip metal sheets with edges formed at right angles, and which overlap yet leave free open space for heat to escape. KOOLVENT Awnings screen out the direct sun rays, yet admit an abundance of indirect light without retarding the free passage of heat-laden air. This freedom from 'heat pockets' noticeably reduces temperatures."

Here appears drawing of awning

was an answer to weather conditions prevailing through the long hot southern summers. It met a need long felt but never supplied until Matthews came along. That there was a need and that Matthews' invention met it is testified to not only by the large and growing volume of sales made by licensees under this patent, but also by the flattery of defendant's imitation, an imitation made more pointed and significant by the interference in the Patent Office resulting in Matthews' favor, in which claims three, four and five of Matthews' patent were actually claimed by Houseman as his own invention.

Under these circumstances, more was required of Houseman and of defendant, his licensee, to escape the charge of infringement than merely giving different names and forms to members of his device which performed the same function as the equivalent members in plaintiffs' awning. It is, of course, not meant to say that the patent Matthews applied for and got on aerated awnings, which while protecting from sun and rain would at the same time afford a free circulation of air, is so broad as to completely monopolize the whole field of such awnings and prevent anyone from entering it with devices which really operate differently, that is, produce a new result other than convenience and economy. It is meant to say, though, that it certainly is not keeping faith with the promise of the patent to permit defendant or any other person to avoid a charge of pirating the invention by a device as transparent as the one here of putting flanges on the slats of his awning, and of calling these members covers and pans instead of slats as Matthews' patent calls them.

In his application for patent, Matthews, stating that his invention relates to a new and improved awning which shall possess certain advantages over known forms of awning structures, proceeds with clarity and distinctness to describe it and to make clear its essential significance and scope.[4] Then after describing the awning adequately in the specifications and in drawings, and showing that the essence of his invention is to arrange the members constituting the awning so that, while obstructing the entrance of the sun and rain, they will permit a free circulation of the air, he sets out the ten claims of the patent, five of which, three, four and five, and nine and ten are claimed as infringed. The first three claim the drainage feature of the awning. They cover any awning structure in which an upper and lower series of parallel staggered slats are fastened in right angular relation with two spaced end rails so that the upper and lower form horizontal longitudinal drains. Means are provided for mounting the awning with the slats placed lengthwise so that rain water will discharge along the lower edge of the awning. Claim four additionally requires that the awning be inclined downwardly to permit drainage far removed from the wall, and claim five calls for trough shaped slats in the lower series which are fastened in concave position with the end rails. Claims nine and ten do not include the drainage features.

What Houseman, the licensor, and defendant have done in constructing the infringing device so as to give it the appearance of noninfringement is merely to provide the slats with flanges while calling them pans and covers instead of slats. They have done this in the belief that since the upper and lower flanges do not meet but have air spaces between them, the selling claims that they furnish as free circulation of the air as Matthews' patent does, will find support. They have done it, too, believing that, since they call these members pans and covers instead of slats, and the flanges have made this awning some-

4 "The usual and well known awning is objectionable, especially in warm climates for the reason that the body of air entrapped beneath the awning will become heated by the sun's rays and this heat will be transmitted to the interior of the building, and as a result the purpose for which awnings are used is largely defeated. It is the purpose of the present invention to devise a practical awning which shall be immeasurably cooler than awnings now in use for it provides means whereby the air underneath the awning will be permitted to escape freely throughout the full of the area of the awning. This useful purpose is accomplished without impairing the utility of the awning as a sun shade and also as a protection against rain."

what more rain resisting, and by a demonstration they can create an appearance of a part of the heated air escaping funnel or chimneywise, up and out instead of laterally, as it does in the Matthews' awning, their device will not be held to infringe.

We think it plain that defendant's device infringes the Matthews' patent, and that its use without plaintiffs' permission and consent ought to be enjoined.

Much has been made of the fact that Houseman, himself, has a patent. It is even claimed that the grant of the patent to Houseman raises a presumption of noninfringement. It is well settled that the grant of the later patent to Houseman does not license him to use plaintiffs' awning if Matthews' patent was valid. In addition, this suit is not between the owner of the two patents. It is between the claims of Matthews' patent and the user of a claimed infringing device. The fact that Houseman's patent was granted and that there were patentable differences between Matthews' and Houseman's would not in anywise tend to prove noninfringement by the defendant in this case. The device patented to Houseman may be an improvement on Matthews' earlier patent, but this would not allow a licensee under him to infringe on Matthews. What is determinative here is whether the device claimed to be infringing comes functionally within the claims of the Matthews' patent, that is, whether it does "the same work in substantially the same manner and accomplishes substantially the same result although it may differ in name, form or shape". We think it clear that it does.

In addition to other points in support of the judgment, appellee insists that the proceedings in the Patent Office have limited Matthews and estopped him from claiming what his patent gives him. We see no basis for the claim. There is nothing in the file wrapper showing any abandonment by Matthews of any part of the claims which were granted to him, nothing which would constitute a limitation of them.

Neither is there any merit in appellee's claim that the Matthews' patent is invalid because of prior public use. The district judge correctly disposed of this contention, and we approve the disposition he made.

We are not concerned here with determining whether defendant's device, which plaintiffs charge is an infringement of the Matthews' patent, is exactly the same in appearance or in form, but merely whether it is substantially the same in function. In short, the decisive question here is, reading the claims of plaintiffs' patent on the Koolvent awning and interpreting them fairly in accordance with their plan intent and coverage, does defendant's device infringe? We think it does. The doctrine of equivalency has never been a mere dry bones doctrine. Put forward to do justice and prevent defrauding by dissimulation and deceit, it should be, it has been, applied to give its equitable purpose effect. Not at all recondite or difficult of understanding or application, it is the mere expression and application of the view that like things are alike and that they are not made unlike by formal and nonsubstantial changes, no matter how cunningly contrived the dissimulation, how clever the changes in form. We think it clear that defendant's device is substantially identical in function with, and is an infringement of, claims three, four, five, nine and ten of the Matthews' patent.

The judgment is reversed, and the cause is remanded for further proceedings consistent herewith.

SIBLEY, Circuit Judge (dissenting).

The District Judge, I think, correctly held the claims 3, 4, 5, 9 and 10 of the Matthews patent, Re. 21,003, to be valid, but not infringed by the defendant's awnings, which were made under license from the owners of the Houseman patent, Re. 20,925, and in strict conformity to claims 11, 12, 13, 14 and 15 thereof. The deference due to the expert judgment of the Patent Office, under the evidence in this case, fairly requires both conclusions. Our disagreement relates only to the matter of infringement. The Patent Office conclusions ought to be followed as to that matter too. This is not to say that a real infringement of a senior patent can be justified because it appears to be authorized by a junior patent. It may often happen that

by inadvertence in the Patent Office the claims of a junior patent may overlap a senior patent. But here there was no inadvertence. Interference proceedings were instituted between these patents, and claims 3, 4, and 5 of Matthews were, we are informed, written by the Patent Office and suggested to both parties and then were awarded to Matthews as prior inventor. Claim 3, which is typical, is: "3. A slatted awning and drain comprising in combination with two spaced end rails, an upper series of parallel slats spaced apart and fastened in right angular relation with said rails, a lower series of parallel slats secured in staggered relation with the upper series and being fastened in right angular relation with said rails, said upper and lower slats being spaced horizontally and in overlapping relation and forming horizontal air passages and longitudinal drains, means for mounting said awning with the slats positioned lengthwise, said drains being designed to permit through passage of rainwater away from the endwise face adjacent to the wall and to discharge through the endwise face of the awning at the end spaced from the wall." Now as a result of the same interference Houseman, though junior, was awarded claims of which 11 is typical: "11. In an awning of the class described, (that is, a sheet metal awning with crossbars and lateral spaced roof plates), the combination of a series of lower spaced parallel plates having upstanding flanges mounted on a support adapted to be attached to a wall or the like in combination with a series of overlying, spaced, parallel staggered plates having depending flanges, said upper plates being mounted on said support, closely spaced to one another and in close spaced parallel relationship with the lower plates whereby the depending flanges of the upper plate together with a lower staggered plate obstructs all direct rays of light coming over the edge of a succeeding upper plate." Claim 12 speaks of the upper and lower plates as overlapping. Now each awning as described in the disclosures is a slanting roof of wooden "slats" in Matthews, and metal "plates" in Houseman, spaced apart, and with an upper series covering the spaces of the lower, but lifted so as to allow the escape of hot air from beneath the awning. Matthews' "slats" have shallow grooves to carry off the water, but he states they may be made of metal, and corrugated metal would be a plain equivalent. Houseman's "plates" of metal are similarly spaced, though secured differently, but instead of shallow grooves to carry the water they have upturned flanges on the lower plates which make each a water trough or gutter during a rain. His upper plates have the edge reaching below the upper edge of flanges pointing downward, their lower edge reaching below the upper edge of the upturned flanges, so that while the hot air can rise over the latter and pass under the former and so escape, no sunshine can pass through, and no rain, even though it comes down almost horizontally. Matthews' own patent drawings show that while the air can escape without obstruction laterally between his upper and lower slats, slanting sun rays or raindrops will also go down between them.

The reconciliation of these claims lies in this—each is expressly for a combination only, and such patents are to be narrowly construed. To interfere or to infringe, each element of the combination must be used or substituted by an equivalent "well known as such at the date of the patent." *Rowell v. Lindsay*, 113 U.S. 97, 5 S.Ct. 507, 28 L.Ed. 906. "On the other hand if the substituted element was new, or performed substantially a different function, or was not known at the date of plaintiff's patent as a proper substitute for the one omitted, he does not infringe." 40 Am.Jur., Patents § 164, and cases cited in note 7. Both these patents grow out of the ancient plank top porch over the front door and windows of the humble home, where on two rails a lower series of planks slanting from the house were nailed, and the cracks between them covered by another series of planks. Though at first nailed down tight, it is common knowledge, at least to one raised in the country, that the weather will soon warp the planks, and turn their edges up, so that each is a channel for water; and at the same time will open cracks between the upper and lower planks through which wind-driven rain may enter, or heated air escape. There could be no broad patent on

a roof or awning of such a general construction. The inventions here are narrow, not basic, and consist in the specific adaptations made of "roof planks" to cut off rain and sunshine and let hot air escape. Matthews has used flat, grooved planks, mounted in one way and allowing a maximum ventilation at a sacrifice of protection against sunshine and rain. Houseman has used metal planks differently mounted and with up and down flanges overlapping so that no sunshine or rain can pass, but air can, though somewhat obstructed laterally. There is enough difference in function to say the combinations do not interfere.

Certainly the Patent Office so held. In a close case we should follow their lead. In Miller v. Eagle Mfg. Co., 151 U.S. 186, on page 208, 14 S.Ct. 310, on page 319, 38 L.Ed. 12 we read: "The issuance of the patents to Gardiner & Downey, Berlew and Kissell, and Elder creates a prima facie presumption of a patentable difference from that of the Wright patent of 1879." And in Boyd v. Janesville Hay Tool Co., 158 U. S. 260, 261, 15 S.Ct. 837, 39 L.Ed. 973, it is said: "As both applications were pending in the patent office at the same time, and as the respective letters were granted, it is obvious that it must have been the judgment of the officials that there was no occasion for an interference, and that there were features which distinguished one invention from the other. In American Nicolson Pavement Co. v. Elizabeth, 4 Fish. Pat.Cas. 189, Fed.Cas.No.312, Mr. Justice Strong said: "The grant of the letters patent was virtually a decision of the patent office that there is a substantial difference between the inventions. It raises the presumption that according to the claims of the later patentees, this invention is not an infringement of the earlier patent." This court might well follow the Supreme Court in thus recognizing the decision of the Patent Office here, thus deliberately made. Other courts have done so. Hoppenstand v. Mack Corporation, 3 Cir., 89 F.2d 360; Knowles v. 138 W. 42 Street Corporation, 2 Cir., 43 F.2d 929, 930; Beldom v. Garlock Pkg. Co., D.C., 24 F.2d 852, 953; Majestic Elec. App. Co. v. Hicks, 9 Cir., 24 F.2d 165, 166.