**INJECT–O–METER MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

**NORTH PLAINS FERTILIZER AND CHEMICAL, INC., Defendant.**

**INJECT–O–METER MANUFACTURING COMPANY, Inc., Plaintiff,**

v.

**NORTH PLAINS FERTILIZER AND CHEMICAL, INC., Defendant.**

**Civ. A. Nos. 2–522, 2–606.**

United States District Court
N. D. Texas,
Amarillo Division.

Jan. 21, 1970.

Elsie Brown Silverman, Amarillo, Tex., for plaintiff.

Hugh T. Lyle, Dumas, Tex., Joe E. Edwards, Vinson, Elkins, Searls & Connally, Houston, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

In these actions, which arise under the patent laws of the United States, Plaintiff sues Defendant for infringement of two separate but related patents. Jurisdiction of the parties and subject matter of these disputes resides in the Court under the provisions of 28 United States Code § 1338. The two patents involved herein describe a device and a method that can be utilized to inject chemical fertilizer solutions into a farm irrigation system. In Civil Action No. 2–522, Plaintiff alleges infringement of United States Letters Patent No. 3,326,232 which was issued on June 20, 1967, to Otis C. Stamps and David W. Neikirk for an invention of a fertilizing apparatus entitled Fertilizer Application and Apparatus Therefor. This patent will be referred to as the "apparatus" patent. In Civil Action No. 2–606, Plaintiff alleges infringement of United States Letters Patent No. 3,375,976, which was issued on April 2, 1968, to Otis C. Stamps and David W. Neikirk for an invention of a process of applying fertilizer through irrigation water which is entitled Fertilizer Application Process. This patent will be referred to as the "process" patent. Plaintiff in these two causes is the assignee of both patents and of all rights of recovery for past infringements. On March 4, 1969, the Court entered an order consolidating the two causes into one action since they involved related patents and alleged infringement by the same Defendant. Upon completion of discovery, Defendant moved for summary judgment in both causes and the Court heard oral argument on the motions on December 16, 1969. After considering the arguments of counsel, the pleadings, answers to interrogatories, depositions, and briefs on file, the Court granted the motions for summary judgment on December 30, 1969, and now files this Memorandum Opinion in connection therewith:

## I. THE APPARATUS PATENT

The apparatus patent discloses a device for injecting liquid fertilizer into a water line. The apparatus includes a gear pump, a by-pass line extending from the discharge side of the pump to a liquid fertilizer tank, an adjustable pressure relief valve mounted in said by-pass line, a flowmeter connected in the discharge line extending from the pump to the water line, and an adjustable throttle control valve connected to the outlet side of the flowmeter in the discharge line. In the patent, the operation of the apparatus is described. The patent also explains that the volume of fertilizer solution which is injected into the water line is controlled by manipulation of the adjustable pressure relief

valve and the adjustable throttle control valve.

At the hearing on December 16, 1969, counsel for Plaintiff admitted that the device Defendant presently manufactures does not infringe Plaintiff's apparatus patent. (p. 35, Transcript of Hearing). Defendant's apparatus consists of a proportioning pump-check valve combination device for injecting a liquid fertilizer into a water line. In Defendant's apparatus, the volume of liquid fertilizer which is injected is controlled by the proportioning pump. The apparatus does not employ a by-pass line between the pump discharge and fertilizer tank and also does not include an adjustable throttle control valve in the discharge line extending from the pump to the water line. Although Plaintiff admits that the above described apparatus presently manufactured by Defendant does not infringe Plaintiff's patent, Plaintiff contends that Defendant manufactured devices in 1966 which did infringe the apparatus patent and which were used after the issuance of the patent in June, 1967. Plaintiff argues as follows:

1. That Defendant purchased in early April, 1966, from Plaintiff an apparatus which is described and claimed in the apparatus patent.

2. That Defendant dismantled this purchased device in late April and then, subsequently, purchased 12 flowmeters and 12 gear pumps.

3. That, since Defendant dismantled Plaintiff's apparatus, Defendant must have intended to copy Plaintiff's apparatus and that, since Defendant purchased 12 flowmeters and 12 gear pumps, Defendant must have been acquiring the necessary component parts to manufacture copies of Plaintiff's apparatus.

4. That, since Plaintiff's apparatus can be used in normal operation for over two years it is reasonable to assume that the devices Defendant allegedly manufactured were in use when the apparatus patent was issued.

5. That, consequently, there was an infringement of the apparatus patent.

Plaintiff's argument presents a very constrained view of the evidence and is not warranted by the record in this case. Although Defendant admits that it purchased one apparatus from Plaintiff, in April, 1966, and dismantled the apparatus in an attempt to discover why it would not work, Defendant does not admit or even imply that it ever manufactured a device which was a copy of Plaintiff's apparatus or that it used Plaintiff's apparatus for any purpose other than experimentation. (McNeill deposition of October 7, 1969, pages 4–6, 17–18, and 25). Defendant also admits that it purchased 12 flowmeters and 12 gear pumps but further states that these purchases were likewise used for experimentation and in connection with the device Defendant purchased from Plaintiff. (McNeill deposition of October 7, 1969, pages 16–24). It is simply clear, especially in light of the deposition of Troy McNeill, who is President of Defendant Corporation, that the apparatus purchased from Plaintiff, the flowmeters, and gear pumps, were used only for purposes of experimentation, "to find what would work" in Defendant's operation (McNeill deposition of October 7, 1969, pages 18–19). Defendant found that Plaintiff's apparatus would not meet its needs and consequently dumped everything in the scrap pile. (McNeill deposition of October 7, 1969, pages 19–21). Mr. McNeill further stated that Defendant never sold any pumps except the Hills-McCanna pump which was purchased in 1966, which is still being used by Defendant and which admittedly is not an infringement. (McNeill deposition of October 7, 1969, pages 14 and 17). Examined in its entirety, the deposition of Troy McNeill refutes any inference that Defendant used Plaintiff's apparatus after the issuance of the patent on June 20, 1967. Moreover, there is no evidence in the record before the Court to contradict McNeill's statements. In fact, neither Mr. Stamps nor Mr. Neikirk, co-patentees and officers of Plaintiff Corporation, ever saw an apparatus similar

to their own manufactured by Defendant after April, 1966, over one year before issuance of the apparatus patent in June, 1967. (Stamps deposition of October 7, 1969, page 24 and Neikirk deposition of January 24, 1969, pages 182–187). In this regard, the law is well settled that there could be no infringement before a patent is issued. Coakwell v. United States, 372 F.2d 508, 178 Ct. Cl. 654 (1967).

■ In the light of all the evidence, it appears to the Court that Plaintiff's claims as to an infringement of its apparatus patent are much too speculative to raise any genuine issue of a material fact; therefore, Defendant's motion for summary judgment with reference to the apparatus infringement claim is granted since no infringement was substantiated.

## II. THE PROCESS PATENT

■ The process patent contains the following claims which Plaintiff argues are being infringed by Defendant:

"1. A process for treating land with liquid fertilizer which comprises the steps of

(a) Pressurizing the liquid fertilizer and bringing it to a first, high, pressure level,

(b) Passing the pressured liquid fertilizer through an adjustable orifice at a predetermined rate and thereby lowering the pressure of said liquid to a second, lower, pressure level,

(c) Concurrently raising water from below the ground at a first site and raising its pressure to a water pressure within a range having a maximum lower than the value of said second pressure level, said water pressure of said water within said range being a varying pressure,

(d) Passing the liquid fertilizer at such second, lower, level of pressure into said stream of water at said range of pressure, and mixing the liquid fertilizer and the water, and

(e) Passing the admixture to a liquid distributor located on said land at a distance from said first site and distributing said liquid fertilizer on said land.

"2. Process as in claim 1 wherein the pressure of said liquid fertilizer is lowered at least 20 pounds per square inch from said first to said second pressure level."

Plaintiff's claim of a process infringement is based upon the teaching in the process patent that there should be a deliberate or significant pressure drop through an adjustable orifice before the fertilizer solution goes into the main irrigation line. The pressure drop is essential to control the volume of fertilizer solution which is injected into the water line by the Plaintiff's patented apparatus. Plaintiff observes that Defendant uses a Ladewig Inline Relief Valve with a 20-pound spring and points out that such a valve can operate as both a check valve and as an adjustable orifice. Plaintiff also notes that Defendant's valve can be adjusted to create a pressure drop and therefore alleges Defendant's apparatus practices the process of Plaintiff's patent.

In rebuttal, Defendant argues that it is not infringing Plaintiff's patent because, Defendant contends, it is practicing the prior art. Defendant asserts that the prior art, as illustrated by a publication written by Professor D. S. Harrison in February, 1965, and entitled "Injection of Liquid Fertilizer Materials Into Irrigation Systems", discloses a method used by Defendant. Since, Defendant concludes, it is merely following a process well known more than one year before Plaintiff's application for patent was filed, there can be no infringement under the authority of such decisions as Eastman Oil Well Survey Co. v. Sperry-Sun Well Surveying Co., 131 F.2d 884 (5th Cir. 1942).

As Defendant observes, the Harrison publication clearly discloses the use of a piston type or proportioning pump-cut off valve combination apparatus, similar to Defendant's device, for injecting a liquid fertilizer solution into a water line. The cut-off valve which Harrison

discloses is a manually actuated valve while Defendant's spring-pressed check valve is actuated automatically. However, the manually operated valve described in the Harrison publication has the same function and purpose as the automatically operated check valve in Defendant's apparatus. When the pump is injecting fertilizer solution into the irrigation line, the Harrison valve and Defendant's check valve are in an open position and operate identically to allow flow into the irrigation line. Neither Harrison's nor Defendant's valve functions to control the volume of the chemical fertilizer being injected into the irrigation line because the volume is controlled solely by the positive displacement piston pump. When the pump operation is halted, both valves continue to function identically by preventing a reverse flow through the discharge line and a siphoning flow into the water line. Furthermore, neither valve operates to perform any other function, such as causing a significant pressure drop in the discharge line. As Professor Harrison observed in his deposition, the pressure drop in the discharge line should be insignificant and, to the best of his knowedge, the pressure drop in Defendant's device was insignificant. (Harrison deposition of April 2, 1969, pages 51, 61–62).

Although there is no need to create a significant pressure drop in Defendant's apparatus since the flow is controlled by the piston pump, there is a need to create a significant pressure drop in Plaintiff's apparatus because the gear pump shown in the patent cannot, without more, satisfactorily regulate flow. (Stamps deposition of October 7, 1969, pages 28–30). To control volume in Plaintiff's apparatus, there must be an adjustable pressure relief valve and an adjustable throttle control valve which can operate to cause a pressure drop. Consequently, contrary to Plaintiff's allegations, Defendant's check valve is not the functional equivalent of Plaintiff's pressure relief valve or throttle control valve. Rather, Defendant's check valve operates as disclosed and described in the prior art: to prevent a reverse flow through the discharge line or a siphoning flow into the water line.

In the light of all the evidence, it therefore appears to the Court that Plaintiff's claims as to an infringement of its process patent do not raise any genuine issues of a material fact, as it is uncontradicted that Defendant is doing only what Professor Harrison described in February, 1965. Accordingly, there can be no infringement of Plaintiff's process patent and Defendant's motion for summary judgment must be granted.

### III. INVALIDITY OF THE PROCESS PATENT

██ Since the Court has determined that Defendant has not infringed Plaintiff's patents, it would appear unnecessary for the Court to consider whether Plaintiff's process patent is invalid. However, a review of the evidence indicates that there is a substantial question as to the validity of the process patent. Furthermore, the presumption, under 35 United States Code § 282, that a patent is valid is weakened when, as in this case, the most pertinent prior art is not examined by the patent office in deciding to issue the patent. Nossen and Nossen Laboratories, Inc. v. United States, 416 F.2d 1362 (Court of Claims, 1969). In this instance, the Harrison publication which presents a very pertinent account of the prior art was not before the patent office examiners when the decision to issue the process patent was made. Therefore, the Court is of the opinion that the validity of the process patent must be examined at this time.

Congress has stated in 35 United States Code § 102 that a person should be entitled to a patent unless:

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *"

In this case, Plaintiff's application for its process patent was filed on April 19, 1967. Each of the claims of the process patent, quoted above, teach that there should be a deliberate pressure drop in fertilizer injection apparatus before the chemical solution is injected into a water line. Professor Harrison's publication, which was printed in February, 1965, over two years before Plaintiff filed its application for the process patent, also teaches the art of a pressure drop. He writes, at page 6 of his article:

> "Commercial Units Available: At least three companies manufacture injection units which introduce fertilizer directly into the irrigation discharge line. These units, complete with tank, utilize a pressure difference in the line—usually between couplers, around elbows, at a reducer, or a special venturi—to force the fertilizer solution into the mainline discharge pipe."

Plaintiff's process patent talks about a "pressure drop" and the Harrison publication talks about a "pressure difference." As Defendant states in its "Reply to Plaintiff's Objection to Motion for Summary Judgment," a pressure drop is the same as a pressure differential. Defendant also points out that, in Figure 1 on page 4 of the Harrison publication, an adjustable "cut-off" valve between a fertilizer container and the suction side of a centrifugal pump is shown. The description states that "A valve is needed in this line to adjust intake rate * * *" Defendant properly concludes that this means that the valve is adjusted to vary the pressure drop and control the rate of flow.

From these examples alone, the Court is of the opinion that Plaintiff's process patent is invalid under 35 U.S.C. § 102(b) because its method was taught at least one year prior by the Harrison publication. As the Supreme Court has recently observed, there should be no restriction of free access to materials already available to the public. Anderson's—Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). Therefore, under the circumstances, the Court declares invalid Plaintiff's process patent, entitled Fertilizer Application Process, United States Letters Patent No. 3,375,976.

Judgment has been entered accordingly.

## FINAL JUDGMENT

The Court having granted Defendant's Motions for Summary Judgment that Defendant has not infringed the patent-in-suit and having entered its Order dated December 30, 1969 with respect thereto, it is therefore ordered, adjudged and decreed that

(1) Defendant has not infringed Patents Numbers 3,326,232 and 3,375,976.

(2) Plaintiff's complaint in each action is hereby dismissed with prejudice.

(3) Plaintiff, its officers, employees, associates, agents, licensees or anyone acting for or in cooperation with Plaintiff, are hereby enjoined from asserting that said patents-in-suit are or have been infringed by Defendant or its customers, and from sending or publishing notices of alleged infringement to Defendant or its customers, or in any manner, by writing or by word of mouth, threatening to sue Defendant or its customers therefor.

(4) The process Patent No. 3,375,976 is here found to be and is declared to be invalid.

(5) The Court having granted the motion to sever Defendant's counterclaims, pending any appeal from this judgment, the issues raised by Defendant's counterclaims are reserved for subsequent determination.

(6) All costs here incurred shall be paid by the Plaintiff.