## EDWARDS v. JOHNSTON FORMATION TESTING CORPORATION et al.

### No. 6244.

Circuit Court of Appeals, Fifth Circuit.

Feb. 22, 1932.

Rehearing Denied March 11, 1932.

Alfred M. John, of Houston, Tex., for appellant.

D. A. Simmons and H. F. Montgomery, both of Houston, Tex., for appellees.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

Charles R. Edwards, the patentee in United States patent No. 1,514,585, for improvements in a testing device for oil wells, claimed that the device used by Johnston Formation Testing Corporation, and made under Johnston patent No. 1,709,940, infringed the former patent, lost his case, and

appeals. The appellee made a cross-claim of infringement, but abandoned it. The sole questions are whether the Edwards patent is valid, and, if so, whether the Johnston device infringes it.

From the beginning of oil wells, there has been a problem of getting the oil and gas from the well uncontaminated by water or other things coming into it from above, whether the purpose were to obtain the product from a completed well, or a mere sample from a well under construction. Casing the well with an impervious wall, bailing out the foreign matter, and then getting the pure product, is used for the finished well, but too expensive for taking test samples. A more simple method is to separate the fluids above from the fluids beneath by a "packer"; that is, some mass which will fit the well water and gas tight, and to extend a tube from the mouth of the well through the packer to the well bore beneath it. This packer early assumed two forms, one flexible and expansible to stop a well of uniform bore at any point, and another harder and shaped like a round wedge to be set in the beginning of a reduced bore. Packers with a tube through them are shown in United States patent No. 171,589 to Stewart, 1875; in United States patent No. 8287 to Stevenson, 1878; and No. 1,000,583 to Cooper, 1911. The first two disclose no means of closing the tube to prevent the entrance of the upper fluids in lowering the device for a temporary test, or for retaining a sample in it on withdrawal in case the well pressure will not force the sample to the surface and it is not pumped up. The third shows such a means operated by ropes and rods extending to the mouth of the well, but is testified not to be operable in wells exceeding 2,000 feet in depth. In recent years, in the southwest part of the United States, the wells run to five or six thousand feet deep. In boring these with rotary bits fastened to a drill stem composed of pipes lengthened by adding joints at the top as the well goes down, it is necessary at all times until the well casing has been finally set to keep the well full of a thin mud, the hydrostatic pressure of which keeps the well from caving and prevents the entrance of water or other things from the strata pierced. To the testing of such a well without removing this mud the Edwards patent is addressed. It was applied for Jan. 17, 1921. In 1920 patent No. 1,347,534 was issued to Cox, in which the packer shown was a hollow cylindrical rubber mass at the end of the drill stem, impact of which on the bottom of the well would

swell and seal it, and which had over its lower aperture a breakable disc to keep out the mud until the impact against the bottom should release a testing tube called a "plunger" and designed to take the sample. This tube falling on the disc would break it, and penetrating below it would by means of perforations near its own end absorb such fluid matters as were below the packer, retaining the sample by means of a check valve when the device should be withdrawn from the well. Whether this apparatus would be operable in a deep well without improvements was disputed in the testimony.

In his application for a patent, Edwards calls his device an improvement in testing devices. His specification refers to packers as familiar to the art, and proposes no improvement in them. He shows a device much like Cox's in general form and attached similarly to the drill stem, with a small pipe substituting a metal hose shown by Cox passing from the testing tube through the drill stem to the surface to permit passage of the sample to the surface if the well pressure will deliver it. This type he never put into practical use. Beginning his practical tests about 1927, he used a simplification in which the drill stem was used in place of the smaller pipe, and constituted, not only the support of the device in lowering and raising it, but also the communication with the sampling tube. The claim of the patent here relied on is applicable to the simplified device, and we will, with some strain perhaps, treat that device as disclosed. The testing tube itself is in form and function like that of Cox, but it is closed off from the mud, not by a breakable disc, but by fitting closely in the sleeve by which it passes through the packer, and to the lower end of which it is fastened by a thread, and is released and opened to take the sample below the packer by rotating the pipe from above after the packer is set, unscrewing the testing tube, and then allowing it to descend so that the perforations emerge beyond the sleeve. After the sample is taken, the tube is lifted and closed by coming again within the packer sleeve, the packer is collapsed if it be of that sort, or lifted from its seat if resting on a reduced bore, and the device with the sample contained, is drawn to the top. In March, 1927, the Johnston patent was applied for as an improvement, claiming especially a positive automatic valve system of opening and closing the testing tube. The device is otherwise much like the simpler form of the Edwards device, but is adapted only to packers which

rest on a reduced well bore (called a rat-hole). When the packer is seated by lowering, the testing tube is protruded from the packer by the weight of the drill stem, the movement automatically opening valves which admit the sample without any rotation from the top. Raising the drill stem closes the valves, lifts the packer, and the whole is withdrawn like the Edwards or Cox devices. Arrangements for pumping down water around the outside of the device to keep it from sticking in the well disclosed by Edwards and Johnston are not of importance here.

From this outline of the prior art, and the Edwards and Johnston patents, we think it clear that neither patent is a basic or pioneer patent, but that each is for an improvement only; each making a patentable advance over the prior art but a step rather than a leap. Edwards used the old packer, the perforated testing tube emerging through the packer, and means of keeping the drilling mud out of it until ready to take the sample below the packer and of retaining it afterwards, as disclosed by Cox. He improved on Cox by using the packer as a sleeve to open and close the perforations of the testing tube by the motion through it, a new and better means. Considering the difficulties of the deep well drilling art, we think there was invention therein. The claims of his patent are, however, embarrassingly broad, seeming to extend his monopoly far beyond the invention. The sixth claim only is relied on here, and we pass upon it alone. With parenthetical comment it reads: "6. The combination with a packer adapted to be set in a well bore (both types old) of a tubular stem fitted through said packer (in all the cited patents) and normally blocking the same against the passage of fluid therethrough (Cox and Cooper, except that better means for blocking are substituted), the lower end of said stem being provided with an inlet which is closed when the stem is in said blocking position (Cox and Cooper, with better means substituted) said stem being capable of being lowered beneath the packer and when in lowered position to communicate through the inlet with the bore beneath the packer (Cox)." There is not much bore beneath the packer in Cox, but there is enough to get a sample. A rat-hole would enlarge it. By reading the particular means specified for opening and closing the stem from the specification of Edwards into claim 6 of his patent, we think it can be sustained as an improvement patent, but that only.

We do not think the Johnston device infringes, for it uses only what was old in the Edwards device, substituting for his novel means of opening and closing the testing tube a wholly different means—as much different as are the pop-valves in the ordinary automobile engine from the sleeve-valves of the Knight motor. A patentee who is only a narrow improver has a monopoly restricted to his own improvement. He cannot prevent others also from making improvements on the prior art, if they do not use substantially the very novelty on which he obtained and sustains his improvement patent. Chicago & N. W. R. Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053; Kokomo Fence Machine Co. v. Kitselman, 189 U. S. 8, 23 S. Ct. 521, 47 L. Ed. 689; Walker on Patents (6th Ed.) § 230.

Judgment affirmed.