### STEWART–WARNER CORP. v. LONE STAR GAS CO. et al.

No. 13478.

United States Court of Appeals Fifth Circuit.

April 3, 1952.

Rehearing Denied June 10, 1952.

---

Casper W. Ooms, Benjamin F. Wupper, and Warren C. Horton, all of Chicago, Ill., J. A. Gooch, Fort Worth, Tex., for appellant.

M. Mallet-Prevost, Washington, D. C., Claude Williams, Marshall Newcomb, Archie D. Kroney, all of Dallas, Tex., for appellees.

Before HOLMES, RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This is a suit for infringement of U. S. Patent No. 2,087,983, issued July 27, 1937 to J. Woodward Martin, and covering a device described as a "Draft Equalizer for Gas Burners." The district court held the patent valid and infringed and enjoined appellant from the further manufacture and sale of its "Saf-Aire" gas heater.

The evidence involves the gas-burner art, and particularly the problem of taking from out-of-doors the fresh air necessary to operate such a burner, and discharging into the outside atmosphere the combustion gas from the burner, without allowing the gas flame to become adversely affected by action of the wind, or "reversals of draft". In heating plants burning gas or oil, reversal of draft has through the years posed a serious problem, since a gust of air entering the firebox in the wrong direction may extinguish the flame and pilot light. When that happens, the fire will not start again when the draft returns to normal. Instead, the burner jets may discharge unburned gas into the firebox and thus create a dangerous and explosive condition. The importance of avoiding draft reversals in gas burners has been understood by heating engineers for many years, and every safe gas burning device must necessarily incorporate some safe and effective means for preventing draft reversals.

One attempted solution to the problem, commonly understood and used in the art for many years, has consisted in running both the fresh air inlet pipe, through which oxygen is supplied to the burner, and the exhaust flue pipe, through which the combustion gases are discharged, to the outside of the building to be heated, with the open ends of both pipes near one another. The theory underlying such arrangement is that any wind blowing into the flue would also blow into the air inlet, and that the opposing air pressures resulting would offset each other, thus leaving the natural gravity draft free to operate the system. It was shown that in the year 1872, a British inventor named Southby improved the above described arrangement by surrounding the open ends of the air inlet pipe and the exhaust flue pipe with a vertical housing, open at the top and bottom; the fresh air and flue gases were kept separated from each other during the operation of the gas burner by a natural gravity draft.

The physical exhibits, as well as the record testimony, reveal that both the Martin patent in suit and appellant's "Saf-Aire" gas heater bear some resemblance in principle and method of operation to their common ancestor, the British Southby patent. Martin adopted the cylindrical housing of the Southby patent, but covered over and partially closed off with end baffles

both the upper and lower openings of the housing, the whole system being symmetrical. The effect of the end baffles was to impede the natural draft through the housing, which made it necessary for Martin to add some physical means to keep the combustion gases separated from the fresh air. In order to accomplish this purpose, Martin extended his inlet and outlet pipes into the cylindrical housing and turned them away from one another to form L-shaped terminals or elbows.[1]

The accused device, or "Saf-Aire" heater, is a gas-burning room heater designed to be built into an outside wall of a building. It also has a vertical housing similar to the old Southby apparatus, but instead of obstructing the natural upward draft through the housing by means of end baffles as Martin did in his patent, the evidence tends to show that appellant's "Saf-Aire" heater was designed so as to make the air inlet opening in the form of a wide-open funnel or scoop which concentrates at the air inlet the force of the wind striking the housing, regardless of the direction from which it blows. Further, the "Saf-Aire" heater, like the old Southby device, makes use of a continuous natural draft upward through its housing, thereby separating the combustion gases from the fresh air by means of gravity and air pressure, and no physical separating means, as such, is used.

Appellees contend, however, and the district court found, that appellant's "Saf-Aire" heater infringes claims 1 and 2 of their Martin patent, which claims read as follows:

"1. The combination with a fuel burner having an air inlet conduit and a flue, of a draft equalizer comprising a housing, exhaust openings and intake openings in said housing, baffle means adjacent said openings, the outer ends of said air conduit and flue projecting through the wall of said housing and terminating within the latter, and separate means for preventing the admix-

ture of flue gases with the fresh air drawn into said conduit.

"2. In combination with a fuel burner, a closed burner box, an air inlet conduit leading into said box, a flue leading from said box, a draft equalizer, including a housing, intake and exhaust openings in said housing, baffles adjacent said openings, said conduit and flue leading into said equalizer, and means within said equalizer for preventing the admixture of flue gases with the fresh air drawn into said conduit."

Appellants contend (1) that the "Saf-Aire" heater differs radically in structure and method of operation from the Martin patent and resembles it only to the extent that both structures resemble the old Southby patent;[2] (2) that the Martin patent is invalid in view of the prior art; and (3) that the Martin patent has been used by appellees in violation of the anti-trust laws and has thereby become unenforceable.

Ordinarily the better practice would be to pass upon the validity of the Martin patent. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644. That patent, however, has no pioneer status, but at most is an improvement patent in a crowded art entitled to protection only within the narrowest limits. Cf. Hughes v. Magnolia Petroleum Co., 5 Cir., 88 F.2d 817, 818; Dry Hand Mop Co. v. Squeez-Ezy Mop Co., 5 Cir., 17 F.2d 465, 466–467; Big "G" Distributing Co. v. Air Cleaner Service Co., 5 Cir., 179 F.2d 122. Its validity vel non is of no great public importance. We therefore pretermit that issue as well as the issue as to whether appellees have misused the patent in such manner as to render it unenforceable, and we conclude from a review of the testimony and the exhibits in the case that there has been no infringement. In so holding, we are mindful of the rule that where, as here, the findings of infringement are based on inferences drawn from exhibits, documents,

1. In another form of his invention Martin used a partition between the air inlet and the exhaust flue to separate the fresh air and flue gases.

2. Thus appellant insists that "it uses only what was old" in appellee's patent. See Edwards v. Johnston Formation Corp., 5 Cir., 56 F.2d 49, 51.

and uncontradicted testimony, rather than on the conflicting testimony of witnesses whose credibility is for the district court, such findings are fully subject to review.[3] See Butex Gas Co. v. Southern Steel Co., 5 Cir., 123 F.2d 954; certiorari denied 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220.

█ It is well settled that infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished. See Kokomo Fence Machine Co. v. Kitselman, 189 U.S. 8, 24, 23 S.Ct. 521, 47 L.Ed. 689; Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136; Price-Trawick, Inc. v. Gas Lift Corp., 5 Cir., 101 F.2d 134, 136. Here, from a comparison of the Martin patent with appellant's "Saf-Aire" device, we conclude that the two structures not only exhibit substantial differences in physical structure, but also manifest an obvious departure in basic principle and mode of operation. The "Saf-Aire" heater has little in common structurally with the Martin patent except the adjacent inlet and outlet pipes, arranged one over the other, with the exhaust or flue pipe overhead and a vertical housing joining them. These features are disclosed by the old Southby patent. A review of the prior patents and publications in the gas-burner art further convinces us that Martin's contribution to this crowded field, if any, was narrow, and that the "Saf-Aire" structure not only does not embody his precise invention but, to the contrary, employs a principle of operation wholly foreign to the teachings of his patent. Whereas the Martin patent in suit teaches pressure equalization, and discloses a structure with baffles designed symmetrically to that end, the "Saf-Aire" device is designed asymmetrically to emphasize the inequalities of pressure and continuous natural draft features to some degree embodied in the old Southby patent.

█ It was shown that claims 1 and 2 of the Martin patent in suit, originally numbered 1 and 3 in the patent application, were initially rejected by the Patent Office as anticipated by the Southby patent. Martin thereafter amended the claims and argued to the Patent examiner that the Southby patent was not an applicable reference because, among other things, it disclosed no means for preventing the admixture of flue gases with the fresh air drawn into the air inlet conduit. There is a strong inference upon this record that he intended to limit his claims before the Examiner to a physical element "for preventing the admixture of flue gases with the fresh air drawn into said conduit".[4] Thereafter, because of Martin's arguments and representations, the Patent Office withdrew its rejection based on the Southby reference and allowed the claims here in suit. Under such circumstances, since Martin distinguished the claims of his own patent from the Southby reference on the basis of his physical means for separating the flue gases from the fresh-air inlet, and thereby procured allowance of the claims, we do not think that he should now be permitted to broaden and extend his claims so as to cover a gas burner system such as the accused "Saf-Aire" device here, in which the necessary separation of gas and air is effected by means of a continuous draft system with-

3. It is evident from a reading of the district court's opinion that in holding the Martin patent infringed it considered it was deciding a question of law. On this point, the court held:
"Where it appears extrinsic evidence is not needed to explain the terms of the art involved, the Court is able, from mere comparison, to comprehend invention described in patent and from mere comparison of structure, to determine whether one device infringes on another, and thus the question of infringement is one of law."

4. For example, with respect to claim 3 of the application (claim 2 of the patent), Martin stated that the separating means "refers to the up-turned and down-turned ends of the flue and air conduit respectively." With regard to claim 1, Martin told the Examiner that the means for preventing admixture of the fresh air and flue gases was indicated by a certain partition, another purely physical element.

out the use of physical obstructions. In this connection, it is well established that in order to support a suit for infringement of a combination claim such as here, an accused device must embody all the elements of the claim, and omission of a single element avoids infringement. Beaton v. Tennessee Coal, Iron & R. Co. 5 Cir., 69 F.2d 246; Texas Rubber & Specialty Corp. v. D. & M. Machine Works, 5 Cir., 81 F.2d 206; certiorari denied 299 U.S. 548, 57 S.Ct. 11, 81 L.Ed. 403; Aleograph Co. v. Electrical Research Products, 5 Cir., 55 F.2d 106; certiorari denied 285 U.S. 553, 52 S.Ct. 408, 76 L.Ed. 942.

We conclude that the accused "Saf-Aire" heater does not resemble the Martin patent in suit in method of operation, and it resembles it in physical structure only in respects clearly present in the prior art. See Price-Trawick, Inc., v. Gas Lift Corp., 5 Cir., 101 F.2d 134, 136. Such physical similarities between an accused device and a patent which are clearly disclosed by the prior art do not, of course, tend to establish infringement. Edwards v. Johnston Formation Testing Co., 5 Cir., 56 F.2d 49, 51; certiorari denied 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 526; Price-Trawick, Inc. v. Gas Lift Corp., supra.

It follows that the judgment of infringement and injunction against appellants is hereby reversed and the cause is remanded with direction to dismiss the complaint.

Reversed and remanded.