INDUSTRIAL INSTRUMENT CORPO-
RATION, Appellant,

v.

The FOXBORO COMPANY, Appellee.

No. 18866.

United States Court of Appeals
Fifth Circuit.

Sept. 6, 1962.

784

Joe E. Edwards, Houston, Tex., for appellant.

Garrett R. Tucker, Jr., Frank B. Pugsley, Houston, Tex., Daniel L. Morris, William C. Conner, Arthur V. Smith, New York City, for appellee.

Before HUTCHESON, RIVES and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This appeal is from judgment for defendant, appellee here, in a patent infringement suit. It concerns differential pressure measuring meters, in wide use in the oil, gas and chemical industries for measuring the quantity of gas or liquids passing through pipelines. The parties each manufacture meters having many characteristics in common for this purpose.

The patents in suit are numbered 2,762,362, claims 4, 6, 7, and 10, issued September 11, 1956; 2,762,393, claim 6, issued September 11, 1956; and 2,827,- 716, claims 1 through 6, issued March 25, 1958. They were issued to W. M. Reese, president of appellant, and assigned to appellant. The accused device is the Foxboro Type 37 meter.

Appellant sought injunctive relief and damages by reason of the accused device allegedly infringing the several claims of the patents in suit. Appellee asserted the defenses of invalidity in view of the prior art, and because the claimed inventions were obvious to persons having ordinary skill in the art, and also that of non-infringement. An additional defense to the suit on the third patent, 2,827,716, was based on invalidity by reason of the invention having been made by another. The court found non-infringement as to the first two patents, and invalidity as to the third by reason of the invention being that of an employee of appellee.

The meters involved are of the same general type as were manufactured and sold by Barton Instrument Company of California for many years before either of the parties to this litigation entered the field. Reese, president of appellant, was formerly sales agent for Barton. The patents covering the Barton meter, issued to Barton Jones, are a part of the prior art.

The meters of Barton and of the parties here all accomplish the flow measurements in substantially the same manner. An orifice plate is inserted across the pipe carrying the flow to be measured. Tubes are then connected to the pipe on opposite sides of the orifice plate to transmit the pressures on the upstream and downstream sides of the plate to the high pressure and low pressure sides of the meter. The difference between the two pressures is an accurate measure of the volume flowing through the pipeline and the difference is measured by the meter, and recorded on a chart by means of a recording pen attached to the meter. The rate of flow can be read directly from the chart if the chart is calibrated in units of volume.

The meters of each company have in common a casing consisting of two end caps mounted on each side of a center plate, thus dividing the casing into two chambers, one of which is connected to the upstream side of the pipeline and called the high pressure side and the other, the low pressure chamber, to the downstream side of the pipeline. The center plate has a central chamber within it. Each chamber contains a bellows, mounted on each side of the center plate. The two bellows and the chamber in the center plate are filled with an incompressible liquid. Since the liquid expands and contracts with the ambient temperature increases and decreases, each of the three types of meters is provided with some means to compensate therefor in

measuring the volume. The fill liquid flows from one bellows to the other through the center plate chamber and the flow is restricted by a damping valve to obviate the effect of pulsations in the pressure. The damping valve may be adjusted manually. Each of the meters has range springs within the low pressure chamber which are arranged to supplement the spring effect of the bellows and to thus oppose the expansive movement of the low pressure bellows when the fill liquid is forced into it from the high pressure bellows. The low pressure bellows in each meter is connected to the recording pen by a linkage arrangement.

Appellant is a corporation organized by Reese. He became associated with Barton before its meter had been perfected for use in high pressure gas measurement and for some years worked closely with Barton to adapt its meter to that end. He made among other suggestions the use of the damping chamber which became the subject matter of a Barton Jones patent. This arrangement with Barton ended in 1951 and Reese continued to work in the field with the result that the patents in suit were issued.

Appellee is a manufacturer of industrial instruments and is one of the leading companies in the gas measurement field. It formerly offered a mercury type meter and also Barton meters using a Foxboro recording device. The accused Type 37 device was developed by the research personnel of appellee between 1954 and 1956 and marketing of it began in 1957. It was developed after Barton refused to license appellee under these patents. The mercury meter had certain disadvantages and there was a definite need for the bellows or dry type meter with which this litigation is concerned.

The patents in suit are directed to a new combination of some old and some new elements in the meter to obtain a new or improved result. All elements except the isolation wall or barrier por-

tion of claim 6 in patent No. 2,762,393 are disclosed by the prior art. None of the patents are basic or pioneer in scope.

The combination under the claims of patent 2,762,392 as distinguished from the prior art was the disconnection of the high pressure bellows from the control stem, leaving it in the low pressure bellows only,[1] means to control the rate of flow upon expanding and collapsing movements of the bellows, the disposition of the range springs in a manner causing them to exert their force in a direction around the periphery of the low pressure bellows so as to stabilize the bellows and control stem in the interest of accuracy, and an improved method of mounting the bellows on the center plate. The trial court failed to make a finding as to the validity of the claims of this patent, but found that none of the claims were infringed by the accused device. We affirm.

■■ Our affirmance is based on the doctrine that a patentee who is only a narrow improver, as is the case with this particular patent, has a monopoly restricted only to his improvement. He cannot prevent others from making improvements on the prior art unless they use substantially the very novelty which is the basis of his patent. And infringement exists only when the accused device and the teaching of the patent in suit are substantially identical in structure, mode of operation, and result to be accomplished. Edwards v. Johnston Formation Testing Corporation, 5 Cir., 1932, 56 F.2d 49; and Stewart-Warner Corp. v. Lone Star Gas Company, 5 Cir., 1952, 195 F.2d 645.

■ Of course, as Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corporation, 5 Cir., 1956, 239 F.2d 339 teaches, an inventor with respect to his patent is entitled to a range of equivalents commensurate with the scope of his invention. But as to this patent, as distinguished from claim 6 of patent 2,762,393 to be hereafter discussed, the range

1. This is to some extent taught by patent 2,659,390 issued to Maclea et al. dated June 17, 1948.

of equivalents is narrow because the scope of the invention is narrow. Without laboring the point, the evidence was entirely sufficient to support the finding of non-infringement by the District Court when viewed in this light. The range springs and the over range stop element are substantially different in structure from their alleged counterparts. This is likewise true as to the method of mounting the bellows on the center plate. This is made more evident by a comparison of the claims in suit, the accused device and the devices of the Barton Jones patents. No doubt these claims would be infringed if a pioneer or basic patent was involved as the function of these elements of the accused device and the end result is the same as that of the patent, but we are dealing with a slight improvement only. Appellant designed around the prior art. Appellee had the same right, and the prior art included the patent in suit. This was the case in this instance.

■ And it was not error for the court to rule on non-infringement without first ruling on validity where such a narrow improvement patent is involved and its validity vel non is of no great public importance. Stewart-Warner Corp. v. Lone Star Gas Co., supra. Cf. Sinclair & Carroll Company, Inc. v. Interchemical Corporation, 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 which points out that the better practice is to inquire fully into validity; contra, Automatic Arc Welding Co. v. A. O. Smith Corporation, 1932, 7 Cir., 60 F.2d 740.

■■ The finding that claim 6 of patent 2,762,393 was not infringed was error. Appellant was entitled to a wider range of equivalents than that accorded by the court. This claim accomplished a meritorious purpose by means not taught in the prior art. Under it the control stem is isolated from the direct effect of the liquid in the high pressure bellows by a barrier or wall, stabilizing the flow and thus protecting the indicator linkage from surges of pressure. The bellows of both meters are mounted in separate chambers separated by a wall containing a central chamber. The wall on the high pressure chamber side of the meter of appellant is made solid by the insertion of a plug into the wall. This design was used because of the necessity for manual access to the central chamber under the over-all design of the meter. It amounts to a two piece wall. Appellee accomplishes the same purpose by a one piece solid wall. We hold that infringement cannot be avoided by using a one piece wall rather than a two piece wall. They are the same even though they differ in form. They do the same work in the same way and accomplish the same result. The Union Paper Bag Machine Company v. Murphy, 1878, 97 U.S. 120, 24 L.Ed. 935; Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; and Bryan v. Sid W. Richardson, Inc., 5 Cir., 1958, 254 F.2d 191. The finding of the trial court that the wall construction of appellee was not the equivalent of the two piece wall of appellant was clearly erroneous when considered in the light of the applicable range of equivalents to which appellant was entitled.[2]

■ There was no infringement issue on the trial regarding patent 2,827,716. Appellee was prosecuting a patent application in the patent office covering the same subject matter. That application was involved there with the patent in suit in an interference proceeding. The court held this patent invalid on the ground that an employee of appellee was the prior inventor rather than the patentee, a holding not clearly erroneous.

2. We may reverse free of the clearly erroneous rule where, as is the case here, the issue revolves around an ultimate fact question as distinguished from subsidiary fact questions, or where mixed questions of law and fact are presented when there is error as to the law. Galena Oaks Corporation v. Scofield, 1954, 5 Cir., 218 F.2d 217. 5 Moore's Federal Practice, 2 Ed., § 52.03(3) p. 2631; Baron and Holtzoff, Wright Ed., Fed. Practice and Procedure, § 1137, p. 560.

Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A. No consideration was given to the other asserted grounds of invalidity; that the claims defined no invention patentable over the disclosure of the prior art, and that the invention was obvious to persons skilled in the art.

■ The effect of the holding of the court was to secure appellee a monopoly of the subject matter of the patent, should a patent issue, in the face of these two self-destroying defenses which apply to the very same invention. Either would invalidate any patent granted appellee. This windfall comes through the error of the court in failing to pass on these defenses. It is clear from the record that none of the meters of the parties were successful measuring devices until the subject matter of this patent, a bimetal temperature compensator, was perfected. It advanced the art and was not taught by the Barton Jones patents. Unlike patent 2,762,362, something more than a narrow improvement is involved and the public interest requires a ruling on these questions going to invalidity. Sinclair & Carroll Company, Inc. v. Interchemical Corporation, supra. We reverse so that the District Court may reach these questions.

And for the same reason and while about it, the court should rule on the validity of claim 6 of patent 2,762,393. Appropriate relief should be granted appellant as to it in the event it is found to be valid.

The District Court may rule on these questions of validity on the present record, or upon the present record and additional evidence, or after a new trial, all in its discretion. Rule 59(a), Fed.R. Civ.Procedure; and Aetna Insurance Company v. Paddock, 5 Cir., 1962, 301 F.2d 807. However, the present long record representing as it does a trial taking over three weeks appears to be more than adequate to cover these issues.

Having affirmed in part and reversed in part, we remand for further proceedings not inconsistent herewith.