352 F.2d 983
 147 U.S.P.Q. 431
 TEXSTEAM CORPORATION and Otto Schoenfeld, d/b/a Texsteam
Company, Appellants,
v.
Alva G. BLANCHARD, d/b/a Inferno Company, Appellee.
Alva G. BLANCHARD, d/b/a Inferno Company, Appellant,
v.
TEXSTEAM CORPORATION and Otto Schoenfeld, d/b/a Texsteam
Company, Appellees.
 No. 22080.
 United States Court of Appeals Fifth Circuit.
 Nov. 30, 1965.
 
 Jack W. Hayden, Coke Wilson, Hayden & Pravel, Houston, Tex., for appellee.
 Before BROWN and COLEMAN, Circuit Judges, and MORGAN, District Judge.
 COLEMAN, Circuit Judge:
 
 
 1
 On August 27, 1940, Mr. Alva G. Blanchard was issued Patent 2,212,997 for a top outlet steam safety valve. The patent expired August 26, 1957. In 1956, suit was brought for alleged infringement and for damages in consequence thereof. Eight years elapsed before there was a trial on the merits.
 
 
 2
 It must be said, however, in a complimentary vein, that when the litigants finally came to the battleground they energetically fought all over the field and left not a weed or a flower untouched. The issues raised here are co-extensive with the many litigated below. We have endeavored, within the limits of the appellate process, to separate the weeds from the flowers and we find that a determination of the issue of infringement disposes of the entire appeal. The controlling defenses were that the Blanchard patent was neither valid nor infringed. The District Court held to the contrary on both points, but we reverse for lack of infringement and direct that the suit be dismissed.
 
 
 3
 As above noted, the patent has long since expired. There is before this Court the certificate of the Patent Office that there is not now, and never has been, any litigation with reference to this patent other than that now about to be decided. We therefore face no necessity to determine the question of validity as it might affect the public interest. Otherwise, it would be our duty to observe the principle enunciated by the Supreme Court in Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644. That decision recommended full inquiry into the validity of the patent involved rather than disposing of a suit on the ground of noninfringement without going into the question of validity.
 
 
 4
 The general principle of the steam safety valve is nothing new or unusual. The valve is normally held in a closed position by a spring so as to confine steam in the boiler, but when the pressure of boiler steam becomes too high the valve opens against the resistance of the spring, allowing the steam to escape and thus preventing an explosion.
 
 
 5
 Mr. Blanchard has manufactured steam safety valves in Shreveport, Louisiana, since about 1926 or 1927. Until sometime after 1960, he was the sole owner of a business known as The Inferno Company. He was certainly no novice in the steam safety valve field. He first manufactured a top outlet, closed spring valve. In 1937 or 1938 he began the manufacture of the top outlet, exposed spring valve.
 
 
 6
 On July 19, 1938, one Olly Mulloy was issued Patent number 2,124,374 for a steam safety valve of the top outlet type. He assigned this patent to Mr. Blanchard. Thereafter, as noted in the opening paragraph of this opinion, on August 27, 1940, Mr. Blanchard was issued Patent number 2,212,997 for the top outlet steam safety valve which furnishes the basis for this litigation. So far as the issues in this case are concerned, the latter valve was exactly like the former with the one exception of an added steam deflector. The only function performed by that deflector on the more recent patent, albeit an important one, is that it diverts the steam away from the pressure spring so as to prevent injury to it. We note, too, that we are here concerned with only the third claim of the patent in question, which describes the deflector as an 'inverted conical deflector supported by the ribs and interposed between the valve and spring'.
 
 
 7
 On the other hand, the accused Texsteam valve has a cup-shaped deflector with a cylindrical body and a flaring lip and it is supported by the collar at the lower end of the spring. The Blanchard deflector is immovable, whereas the Texsteam deflector moves up and down with the spring. Mr. Blanchard contends that the Texsteam deflector is supported by the ribs because ultimately the spring is thus supported. This is rather like contending that the roof of a house is supported by the ground because the house itself stands on the ground. Appellants strenuously insist that the Texsteam valve has a different deflector and a different combination, hence no infringement.
 
 
 8
 The record shows that the use of some type of deflector in steam safety valves was well known and fully disclosed by a number of patents issued prior to Blanchard 2,212,997. Some of these were Crosby 306,386 in 1884 as well as Fritch 1,221,719 and Darling 1,551,547.
 
 
 9
 About 1940, Schoenfeld, one of the defendants in the original suit and one of the appellants here, along with Andrew Johnson and John Sheeley, formed an organization known as the Texsteam Corporation. Among other things, this organization also manufactured steam safety valves.
 
 
 10
 It was not until shortly after August 30, 1946, that Mr. Blanchard appeared at the offices of Texsteam, in Houston, Texas. He then charged Texsteam with infringing his patent 2,212,997, on the ground that the accused Texsteam valve contained deflectors covered by the Blanchard patent. He talked to Schoenfeld, who was still connected with Texsteam. Schoenfeld then and there orally agreed that Texsteam would discontinue making valves with the deflectors, and would take the deflectors off any valve returned to its plant for repairs. Upon return home, Mr. Blanchard followed up the visit with a confirming letter in which he alleged infringement of his patent, agreed to waive damages for previous infringement if Texsteam would discontinue the design of its valve, and requested a reply as to what course of action Texsteam proposed to take. On September 30, 1946, Schoenfeld replied in language capable of several interpretations but which the ordinary reader would accept as an agreement to alter the design of the Texsteam valve and waive any opinion. This correspondence was found by the district court to constitute a contract between the parties.
 
 
 11
 Texsteam did discontinue the use of the deflector on its valve, but a patent attorney was consulted on the question of infringement. On November 20, 1946, Murray Robinson, patent attorney, whose written opinion appears in the records, and whose qualifications have not been challenged, advised Texsteam that its steam valve did not infringe Blanchard patent 2,212,997. He noted that the Blanchard deflector is supported by the valve cage, whereas the Texsteam deflector is supported on the valve stem. He did not overlook the Blanchard contention that the Texsteam deflector is supported 'indirectly' by the valve cage, but ordered a file history of the Blanchard patent to determine what range of equivalence the Blanchard patent was entitled to. The patent attorney then further reported:
 
 
 12
 'Nothing in the history of the prosecution imposes any further limitations on the scope of claim 3 of the Blanchard patent. However, it is noted that one of the patents cited by the Patent Examiner, namely 1,551,547-Darling, shows a steam deflector supported on the valve stem by the collar holding the spring. This is the same as your construction. Therefore claim 3 of the Blanchard patent cannot be interpreted broadly enough so as to be infringed by your construction. Incidentally, the Darling patent is expired so you do not have to worry about that patent either.
 
 
 13
 'In conclusion, it is believed that your type 55 T.M. safety valve does not infringe any of the claims of the Blanchard et al. patent.'
 
 
 14
 In the meantime, Texsteam had been converted into a corporation, and being thus advised that its valve did not infringe the Blanchard patent proceeded in late 1946 to resume the manufacture of its 55 T.M. safety valve.
 
 
 15
 From the undisputed proof there is no doubt that from 1946 to 1956 Mr. Blanchard was continuing to manufacture and sell his steam safety valve in Shreveport, and Texsteam openly continued the manufacture and sale of its 55 T.M. safety valve, advertising it in the composite catalogue circulated to the trade.
 
 
 16
 Mr. Blanchard never again communicated with Texsteam in any manner or form but, nine years after the original contact with Schoenfeld, filed this suit.
 
 
 17
 Under the criteria enunciated in Cameron Iron Works, Inc. v. Stekoll, (5 Cir. 1957), 242 F.2d 17, a strong argument can be made to support the validity of the Blanchard patent. That case was tried by the same District Judge who tried this one. Cameron involved infringement in valves for controlling the flow of abrasive drilling mud under pressure. There, the district court found the accusing patent to be both invalid and not infringed. This Court reversed as to invalidity and reversed in part as to non-infringement.
 
 
 18
 A strong argument can be made for the invalidity of Blanchard patent 2,212,997 under the principles announced by the Supreme Court in such cases as Great A & P Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, rehearing denied 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663.
 
 
 19
 In view of the expired status of the patent, and seeing that the decision on infringement controls the outcome of the controversy, we do not pass upon the question of validity. We now go directly to the infringement issue.
 
 
 20
 In the case before us, Mr. Blanchard is certainly bound by the restrictive or limiting language used by him in describing the deflector element of the patented combination. Aleograph Co. v. Electrical Research Products, Inc., (5 Cir. 1932) 55 F.2d 106.
 
 
 21
 'The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification. These so mark where the progress claimed by the patent begins and where it ends that they have been aptly likened to the description in a deed, which sets the bounds to the grant which it contains. It is to the claims of every patent, therefore, that we must turn when we are seeking to determine what the invention is, the exclusive use of which is given to the inventor by the grant provided for by the statute,-- 'He can claim nothing beyond them."
 
 
 22
 Motion Picture Patents Company v. Universal Film Manufacturing Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871.
 
 
 23
 This Court has previously held that infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation, and results accomplished. Stewart-Warner Corp. v. Lone Star Gas Co., (5 Cir. 1952), 195 F.2d 645.
 
 
 24
 'Patents on simple combinations should be, they are difficult to obtain. If sustained, they should be, they are, confined strictly to the particular combination claimed. * * * Such patents are not easily infringed for while in principle the doctrine of equivalence is applicable to them, it is only so when most narrowly circumscribed.'
 
 
 25
 Hughes v. Magnolia Petroleum Co. (5 Cir. 1937), 88 F.2d 817.
 
 
 26
 Without substantial dispute, the evidence shows that the Blanchard deflector was so added to the safety valve that it remains stationary with the ribs. It limits the upward movement of the valve, serving as a stop which determines the uppermost limit of travel of the valve. By claim 3, the Blanchard deflector was described as 'an inverted conical deflector supported by the ribs'.
 
 
 27
 The Texsteam deflector is cup-shaped. It is cylindrical with an upper flared lip. It is supported by the same as the collar of the Mulloy patent and like the collar of the Darling patent. It moves up and down with the collar on the lower end of the spring, as in the Darling patent.
 
 
 28
 Obviously the safety valve with deflectors of Texsteam is not substantially identical in either structure or mode of operation to that of Blanchard, and a function or result is not patentable. Stewart-Warner Corp. v. Lone Star Gas Co., supra.
 
 
 29
 We have taken into consideration the doctrine of equivalents. In view, however, of the undisputed facts herein set forth and the established principles of patent law herein recited we are compelled to hold that the accused Texsteam valve did not infringe Blanchard Patent 2,212,997.
 
 
 30
 It further follows that the 1946 contract between Mr. Blanchard and Mr. Schoenfeld is not enforceable because it was altogether founded on an alleged infringement which, in fact, did not exist. Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, rehearing denied 326 U.S. 811, 66 S.Ct. 263, 90 L.Ed. 495; Scapa Dryers, Inc. v. Abney Mills, (5 Cir. 1959), 269 F.2d 6.
 
 
 31
 Plaintiffs in the second amended complaint sought damages for alleged fraudulent misrepresentation by defendants in failing to discontinue manufacture of the Texsteam valve. The District Court found no actionable fraud and Plaintiffs have appealed this holding. What we have already said likewise eliminates this issue. As a matter of fact, there would be no room to hold solely on the merits of this question that the finding was clearly erroneous.
 
 
 32
 We have decided all issues necessary to the total disposition of this litigation. We reverse the judgment of the District Court with directions to dismiss the action brought by Plaintiffs below.
 
 
 33
 Reversed.