**FOSTER CATHEAD COMPANY,**
**Appellant,**

v.

**Malvern M. HASHA and International Tool Company, Inc., Appellees.**

**No. 23541.**

United States Court of Appeals
Fifth Circuit.

Sept. 11, 1967.

Rehearing Denied Oct. 11, 1967.

Jefferson D. Giller, James F. Weiler, Dudley R. Dobie, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for appellant.

Jack W. Hayden, Coke Wilson, Houston, Tex., John R. Feather, Dallas, Tex., for appellees.

Before BELL, GODBOLD and DYER, Circuit Judges.

DYER, Circuit Judge:

This is a suit for infringement of United States Patent No. 3,144,085, issued August 11, 1964, to Malvern M. Hasha, covering a "Power Spinner Unit

for Well Swivels" (commonly known as a kelly spinner) a device used in connection with oil well drilling. Judgment on a jury verdict was entered for appellees [1] holding claims 1, 2, 3, 4, 12, 13, 15, 16 and 17 of the patent valid [2] and, except for claim 16, infringed.

The evidence involves the problem of adding additional sections of pipe to the drill string in oil well drilling operations. To accomplish this before Hasha conceived the kelly spinner of the patent in suit, it was necessary to screw the kelly (an elongated square piece of pipe at the top of the well string) to the additional pipe by a "spring chain" and "cat-head." The spring chain is a length of chain connected to a cable which is wound on the cathead (powered reel). A roughneck manually wraps loops of the chain around the upper end of the additional pipe. When the cathead is rotated by power, it winds the cable onto the reel. This pulls on the chain causing the pipe to rotate and thus screws the pipe onto the kelly. While the cable is pulling the chain off of the pipe, the roughneck must hold the remaining loops of chain tightly against the rotating pipe with his hands to prevent the remaining loops from slipping. The chain must then be held to cause

1. For simplicity, the appellant will be referred to as Foster, and the appellees as Hasha and International Tool.

2. These claims were the only ones sued upon. The claims of the patent vary only in the details of the recitation of the components of the spinner. Claims 1 and 4 are set forth verbatim and the remaining claims summarized.
Claim 1 recites:
"A device for rotating the spindle of a swivel including:
(a) support means adapted to be carried by a swivel having a spindle,
(b) motor means mounted on said support for imparting rotation to the spindle of the swivel,
(c) gear means between the spindle and said motor means, and
(d) means to move gear means to disconnect said motor means from the spindle."
Claim 2 includes all of the elements of claim 1 and adds only that the motor has a connection for receiving power whereby the motor may be actuated.
Claim 3 is similar to claim 1 except, like claim 2, it adds that the motor has a connection for receiving power. Additionally, it describes the gear for driving the spindle somewhat differently. In paragraphs (c) and (d) of claim 1 it is recited that there are gears between the spindle and the motor and means to move the gears to disconnect the motor from the spindle. In the corresponding elements (d) and (e) of claim 3 it is stated that there is means for coupling the motor to the spindle and that means is uncoupled but operable to couple the motor to the spindle when the motor is turned on.
In none of the first three claims is the word "ring gear" mentioned. The term "ring gear" is used only in claim 4, its dependent claim 15, and claim 16.
Claim 4 is similar to claim 3 except that the ring gear is referred to by name rather than by gear means and there is added that the motor is fixedly supported.
Claim 4 recites:
"In a power spinner for rotating the spindle of a swivel,
(a) motor means adapted to be supported on the swivel and having a connection for receiving power from a power source whereby said motor may be actuated,
(b) a ring gear adapted to extend about the spindle for transferring rotation of said motor to the spindle,
(c) means interposed by the said motor means and the spindle for coupling said motor and the spindle in one position for rotation, and for uncoupling said motor from the spindle in another position, and
(d) said motor being fixedly supported on the swivel in both positions."
Claim 12 is similar to claim 1 but adds that the support includes an upper member and a lower member and that the motor has a connection for receiving power. It also describes the gearing between the motor and the spindle in somewhat more detail.
Claim 13 is identical to claim 12 except there is omitted the reference to there being an upper member and a lower member in the support.
Claim 15 is dependent upon (and includes all of) claim 4 and adds to claim 4 that the motor is capable of rotating the ring gear in both directions.
Claim 17 is similar to claim 5 but adds that the motor is reversible.
These claims are set forth in full in the Appendix.

it to rotate the pipe. The chain is often slippery with mud and grease, and if the roughneck's hands slip off the chain, its loose end whips around with dangerous force.

After the section of pipe has been connected to the kelly it must be again rotated by the spinning chain and cathead to connect it with the drill string. To accomplish this, the spring chain is wrapped around the upper end of the pipe in the rotary table. The lower end of the section of pipe is stabbed into the upper end of the pipe projecting from the rotary table. The roughneck throws the wraps of chain from the upper end of the pipe in the rotary onto the lower end of the pipe section. Again, the cathead is turned on and the chain is unwound from the pipe to rotate the kelly and the pipe to thread the two pipe ends together. The roughneck must hold his hands on the chain wrapped around the pipe to prevent the chain from slipping.

The patented kelly spinner is a device, which, when attached to the bottom of the swivel (located at the upper end of the kelly), is used to rotate the kelly to connect it to and disconnect it from drill pipe. This kelly spinner has an upper and lower plate secured together by bolts. These plates have a centrally located opening through them so that they may be slipped over the swivel spindle and the upper plate may be secured by bolts to the swivel housing. A large circular ring gear is fastened to the swivel spindle between these upper and lower plates so that rotation of the ring gear will rotate the swivel spindle and hence the kelly. A motor is secured to the lower plate on one side of the ring gear. The motor turns a gear mounted on a support on a shaft.

When power is supplied to the motor the support moves the gear upwardly to engage and turn the ring gear and hence the spindle and the kelly. When the power is withdrawn from the motor the gear automatically withdraws downwardly from the ring gear to its beginning position and permits the kelly to be turned by the rotary table.

The gear and apparatus for moving the gear upwardly to engage the ring gear when the motor is turned on and to withdraw the gear when the motor is turned off is commonly called a Bendix.

In making connections, the kelly spinner rotates the kelly to connect the threaded lower end of the kelly to the upper end of the additional section of pipe. The lower end of the pipe section is then aligned with the top of the drill string supported in the rotary. The kelly spinner again rotates the kelly to thread the section into the drill string. The kelly is then lowered to seat the kelly bushing in the rotary so that drilling operations may resume. The kelly spinner is designed to rotate the spindle in either a clockwise or counterclockwise direction by the operation of controls.

The accused device is known as Foster's Model 77 kelly spinner. It has a train of three small gears which drive a ring gear. The first and smallest gear is driven by a shaft from the motor. This is always engaged with and rotates the second gear. Under this is a third small gear which is always engaged with teeth on the outside edge of a large ring gear and rotates the latter. Below and extending inside the ring gear is a drag ring carrying several jaws (gripping elements) mounted on pivot posts on the drag ring. Each of these jaws has teeth on one end that are always engaged with teeth on the inside edge of the ring gear. Inside of the drag ring is the swivel spindle.

The motor is activated with the jaws retracted from the spindle and turns the train of small gears which rotate the ring gear clockwise. Friction holds the drag ring stationary during the initial movement of the ring gear and because the jaws are always engaged with teeth in the ring gear this initial movement of the ring gear relative to the drag ring causes these jaws to rotate on their pivots and extend until they contact and grip the spindle. When these jaws have

gripped the spindle the force of the ring gear causes the jaws and drag ring to move with the ring gear as a unit in a clockwise direction and turn the spindle in the same direction. The motor is reversible and when its direction of rotation is reversed the jaws retract and are moved free of the spindle and returned to their original position so that they are no longer engaged with the spindle and do not rotate it counterclockwise. The only way to make the Model 77 spinner rotate the pipe in reverse is to disassemble it, lift out the jaws, turn them over, and reassemble the device.

Foster attacks the jury finding of validity of Hasha's patent contending that if the claims are given the sweeping construction sought by Hasha, then all of them are invalid because of (1) overclaiming, (2) Foster's prior power tong, (3) the Arthur power swivel, or (4) the functionality and indefiniteness of the claims at their only possible point of novelty. Foster further urges that without regard to infringement, claims 1–4, 12 and 13 are invalid because of the Bendix arrangement.

As we shall later point out, the claims of Hasha's patent are embarrassingly broad and we are unwilling to extend his monopoly far beyond the invention. Cf. Edwards v. Johnston Formation Testing Corporation, 5 Cir. 1932, 56 F.2d 49, 50. This pretermits the necessity for an extended discussion of the many pronged attack on validity by Foster premised upon a finding of infringement.

We reject Foster's contention that the claims (including the Bendix arrangement) are invalid due to their functional language,[3] because we find the point of novelty is described within sufficiently definable limits, and that therefore the nonnovel elements could be described in terms of function. 35 U.S.C.A. § 112; Bryan v. Sid W. Richardson, Inc., 5 Cir. 1958, 254 F.2d 191, 194; Georgia Kaolin Co. v. Thiele Kaolin Co., 5 Cir. 1955, 228 F.2d 267, 272.

Neither are we persuaded that the Arthur devices anticipated Hasha's kelly spinner. These power swivels are used to turn the drill string and there is no kelly described or claimed in the Arthur patents or devices. In any event, whether Arthur is a complete teaching of a kelly spinner; whether Arthur conceived of the kelly spinner before Hasha, and whether Arthur was diligent between the time he conceived the kelly spinner and the time he reduced it to practice, were all issues that were submitted to and determined by the jury. We cannot say that the verdict in this respect is not supported by the evidence.

It is significant that Hasha's invention was the first to supplant the use of the old spring chain and cathead for connecting the kelly to the drill pipe. It is obvious that the use of the spring chain was a very hazardous operation which had to be repeated every time a section was added to lengthen the drill string as the hole was deepened. The kelly spinner greatly enhanced the safety of oil field operations and was an immediate success. Not later than 1957 Foster recognized the need for a kelly spinner but did not develop its Model 77 spinner until about two years after the Hasha invention was commercialized.

As we said in Samuelson v. Bethlehem Steel Company, 5 Cir. 1963, 323 F.2d 944, 947:

35 U.S.C.A. § 282 provides that

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

Any reasonable doubt will be resolved against the party alleging the invalidity of a patent. Mumm v. Decker & Sons, 1937, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; Cameron Iron Works v. Stekoll, 5 Cir. 1957, 242 F.2d 17; Jeoffroy Mfg. Co. v. Graham, 5 Cir. 1955, 219 F.2d 511.

Without belaboring the point, the evidence was entirely sufficient to sustain

---

3. Citing General Electric Co. v. Wabash Appliance Co., 304 U.S. 364, 370–371, 58 S.Ct. 899, 89 L.Ed. 1402.

the validity of the patent. The invention revolutionized the operation it was designed to accomplish. While it was a combination of old elements, the improvement was not obvious to persons skilled in the art; and the claims, as we limit them, define a patentable invention over the disclosure of the prior art. Hasha's device can be and is sustained as an improvement patent, but that only. The broad language in the claims cannot, however, be construed as Hasha would have us do, for if the claims be so extended they become invalid for want of sufficient disclosure. 35 U.S.C.A. § 112; Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868, 873; Schriber-Schroth Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 57, 59 S.Ct. 8, 83 L.Ed. 34, 39; Texas Company v. Globe Oil & Refining Company, 7 Cir. 1955, 225 F.2d 725, 735–737; Phillips Petroleum Co. v. Shell Oil Co., 5 Cir. 1948, 166 F.2d 384, 386, cert. denied 335 U.S. 817, 69 S.Ct. 37, 93 L.Ed. 372. Cf. Zenitherm Co. v. Art Marble Co. of America, 5 Cir. 1932, 56 F.2d 39, 43.

The issue of infringement turns upon a comparison of Hasha's claims with Foster's device and upon the application of the doctrine of equivalents.

While there was some disagreement between the experts it is quite apparent, and Foster now tacitly concedes, that Hasha's claims fully read on Foster's device. All of the claims sued upon were admittedly added by Hasha after he had seen Foster's device.[4] However, that Foster's device may come within the literal wording of Hasha's claims does not, in any event, end the matter.

It is well settled that merely because the claims in suit taken literally read element by element on the accused device does not establish infringement, nor does it establish a presumption of infringement. The patentee in order to prove infringement has the burden of showing that the accused structure is the equivalent of the particular embodiment of the claimed structure disclosed in the specification and drawings. That is, the patentee, while he may be allowed some range of equivalents, must compare the accused structure with the patented structure as disclosed in the specification and drawings, and he must establish substantial identity of means, operation and result. Unless the patentee can carry this burden, the mere fact that his claims are broad when taken literally and clearly read on the accused device will avail him nothing. Moreover, this is true regardless of the prior art. That is, even though the patentee may have developed a broad novel concept, a new function, done a thing never before done, yet he cannot patent all ways of doing the thing, even though he was the first to do it. Accordingly, no matter how broad the claims may be when taken literally, and even though they may avoid the prior art when given the broadest interpretation, nevertheless the claims can cover only the particular embodiment the patentee has disclosed and equivalents thereof. Of course, the range of equivalents will vary depending on the merit of the invention.

C. Pigott, Equivalents in Reverse, 43 Journal of the Patent Office Society 291–92 (1966); accord 35 U.S.C. § 112; Graver Tank Co. v. Linde-Air Prod. Co., 1950, 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097, 1102; Skirow v. Roberts Colonial House, Inc., 7 Cir. 1966, 361 F.2d 388, 391; Texsteam Corp. v. Blanchard, 5 Cir. 1965, 352 F.2d 983, 986; Industrial Instrument Corp. v. Fox-Boro Co., 5 Cir. 1962, 307 F.2d 783, 785; Stewart Warner Corp. v. Lone Star Gas Co., 5 Cir. 1952, 195 F.2d 645,

---

4. Such broad expressions as "gear means," "means to move said gear means," "means interposed between said motor means and the spindle for coupling said motor," and "additional gear means" were no doubt used in an attempt to cover both the Bendix arrangement and Foster's ring gear and the differently constructed and operating parts of Foster's device.

648; Getty v. Kinsbach Tool Co., 5 Cir. 1941, 119 F.2d 249, 250, cert. denied 314 U.S. 651, 62 S.Ct. 97, 86 L.Ed. 522.

■ We conclude, from a detailed review of the testimony and the exhibits in the case, that there has been no infringement. The structures involved in the patent in suit and Foster's Model 77 spinner are relatively simple mechanical devices, and their manner of operation is undisputed. While infringement is usually a question of fact, that rule is subject to the exception that where, as here, the findings of infringement *vel non,* are based on inferences drawn from exhibits, documents, and uncontradicted testimony, rather than on the conflicting testimony of witnesses whose credibility is for the jury, such findings are subject to full review as questions of law. Samuelson v. Bethlehem Steel Company, supra; Cameron Iron Works v. Stekoll, 5 Cir. 1957, 242 F.2d 17, 21.[5]

■ Of course, Hasha is entitled to a range of equivalents commensurate with the scope of his invention, but the range of equivalents is narrow because the scope of the invention is narrow. Patents on a rather simple combination of known mechanical elements, such as Hasha's, are difficult to obtain and are not easily infringed. Texsteam Corporation v. Blanchard, supra, 352 F.2d at 986; Industrial Instrument Corp. v. Foxboro Co., 5 Cir. 1962, 307 F.2d 783, 785; Butex Gas Co. v. Southern Steel Co., 5 Cir. 1941, 123 F.2d 954, 956, cert. denied 315 U.S. 824, 62 S.Ct. 918, 86 L.Ed. 1220; Hughes v. Magnolia Petroleum Co., 5 Cir. 1937, 88 F.2d 817, 818.

Viewed in this light there is no infringement because the elements in the structures and the modes of operation are substantially different and the result accomplished is not the same. Of the four structural elements of Hasha's patent, i. e., a support adapted to be carried by a spindle, a motor mounted on the support, a Bendix driven by the motor, and a separate gear ring mounted on the swivel -spindle, Foster's device does not include either the Bendix or the ring gear mounted on the swivel spindle. These differences also result in three differences in operation. Hasha's Bendix arrangement automatically disconnects the motor from the spindle so that the spindle may be freely turned in either direction, while in Foster's Model 77 the motor must be reversed to back off the jaws before this is accomplished. Hasha's ring gear must be installed separately from the rest of the device and must be carefully aligned vertically so that it properly engages with the small gear in the Bendix. Foster has no separate attachment of the ring gear and no alignment of any gears. Hasha's device will turn the spindle in either direction by mere operation of the controls. Foster's device cannot reverse the direction of the spindle except by disassembling it, turning the jaws over and then reassembling the device.

As the Seventh Circuit recently said in *Skirow,* supra, "Neither a literal application of claim phraseology nor similarity of result is sufficient to establish

---

5. Hasha's expert did not testify about equivalency, nor did any of Hasha's other witnesses. The thrust of Hasha's argument is that there is a clear showing of equivalency because Foster filed an amendment to his application for patent in order to copy claims 1, 2, 3, 4 and 17 of Hasha's patent, claiming that they found response in the structure disclosed in his application. We disagree. This is simply the method by which an applicant initiates an interference with an issued patent. Cf. Solomon v. Renstrom, 8 Cir. 1945, 150 F.2d 805, 806. Furthermore, Hasha's specifications and drawings were not considered by the patent office in the interference proceeding in determining whether Foster's patent application disclosed the claims he copied from the Hasha patent, and thus the patent office did not pass on whether or not the disclosures in Hasha's patent and the disclosures in Foster's application had substantially identical structure, mode of operation and results. Foster's asserted "response in the structure" was only a comparison of the literal wording of the Hasha claims with the structure in Foster's application.

infringement. There must be a real identity of means, operation, and result." 361 F.2d at 391.

■ We find that Hasha may not preclude Foster from making improvements on the prior art. Hasha designed around the prior art and Foster had the same right.[6] Applying the doctrine of equivalents within the narrow limits required, we hold that the accused Foster Model 77 spinner does not infringe Hasha patent No. 3,144,085. It follows that the judgment of validity is affirmed and that the judgment of infringement and injunction against Foster is hereby reversed.

Reversed and remanded.

### APPENDIX

1. A device for rotating the spindle of a swivel including:

(a) support means adapted to be carried by a swivel having a spindle,

(b) motor means mounted on said support for imparting rotation to the spindle of the swivel,

(c) gear means between the spindle and said motor means, and

(d) means to move said gear means to disconnect said motor means from the spindle.

2. A device for rotating the spindle of a swivel including:

(a) support means adapted to be carried by a swivel having a spindle,

(b) motor means mounted on said support for imparting rotation to the spindle of the swivel,

(c) said motor means having a connection for receiving power from a power source whereby said motor may be actuated to rotate the spindle,

(d) gear means between the spindle and motor means, and

(e) means to move said gear means to disconnect said motor means from the spindle.

3. A device for rotating the spindle of a swivel including:

(a) support means adapted to be secured to a swivel having a spindle,

(b) motor means mounted on said support,

(c) said motor means having a connection for receiving power from a power source whereby said motor may be actuated,

(d) means for coupling said motor to the spindle for rotation thereof, and

(e) said last named means being uncoupled from the spindle but operable when said motor is actuated to couple said motor and spindle for rotation.

4. In a power spinner for rotating the spindle of a swivel:

(a) motor means adapted to be supported on the swivel and having a connection for receiving power from a power source whereby said motor may be actuated,

(b) a ring gear adapted to extend about the spindle for transferring rotation of said motor to the spindle,

(c) means interposed between said motor means and the spindle for coupling said motor and the spindle in one position for rotation, and for uncoupling said motor from the spindle in another position, and

(d) said motor being fixedly supported on the swivel in both positions.

12. An apparatus to be secured to a rotary swivel for rotating the spindle of the swivel comprising,

(a) a support adapted to be secured to the swivel,

(b) said support including an upper member and a lower member and means for maintaining said upper and

---

6. The prior art in this field consists of the Arthur power swivel already discussed, and a series of devices called power tongs manufactured by Foster. These devices, commencing as early as 1931 with Foster's patent No. 1,811,666, utilized the ring gear, drag ring, and jaw arrangement of the Model 77 kelly spinner. The same basic structure was used in Foster's "layout 38 spinner" (1954), and its "Model 50 tong" (1955).

lower support members in spaced relation,

(c) motor means carried by said support,

(d) said motor having a connection for receiving power from a power source whereby said motor may be actuated,

(e) gear means adapted to be rotated by said motor,

(f) and additional gear means for contacting the spindle and rotating it, and

(g) said gear means being in non-driving relation with said additional gear means and the spindle, and means operable when said motor is actuated to engage in driving relation with said additional gear means and spindle for imparting rotation to the spindle.

13. An apparatus to be secured to a rotary swivel for rotating the spindle of the swivel comprising,

(a) a support adapted to be secured to the swivel,

(b) motor means carried by said support,

(c) said motor having a connection for receiving power from a power source whereby said motor may be actuated,

(d) gear means adapted to be rotated by said motor,

(e) additional gear means for imparting rotation to the spindle engaged thereby, and

(f) said gear means being in non-driving relation with said additional gear means and the spindle, and means operable when said motor is actuated to engage in driving relation with said additional gear means and spindle for imparting rotation to the spindle.

15. The invention of claim 4 wherein said motor means is capable of rotating said ring gear clockwise and counter-clockwise.

17. In a power spinner for rotating the spindle of a swivel,

(a) reversible motor means adapted to be supported for rotating the spindle on the swivel and having a connection for receiving power from a power source whereby said reversible motor means may be actuated,

(b) a ring gear surrounding the spindle for transferring rotation of said motor to the spindle,

(c) means interposed between said motor means and the spindle for coupling said motor and the spindle in one position for rotation, and for uncoupling said motor from the spindle in another position, and

(d) said motor being fixedly supported on the swivel in both positions.